Filed 6/8/23 In re A.P. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re A.P., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E079358 |
| Plaintiff and Respondent, | (Super. Ct. No. RIJ2000059) |
| v. | OPINION |
| A.P., | |
| Defendant and Appellant; | |
| C.P. et al., | |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County. Cheryl C. Murphy, Judge. Affirmed.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Melinda H. Frey, Deputy County Counsel, for Plaintiff and Respondent.

Melissa A. Chaitin, under appointment by the Court of Appeal, for Defendant and Respondent, C.P.

John P. McCurley, funder appointment by the Court of Appeal, for Defendant and Respondent, M.P.

## I.

## INTRODUCTION

Respondent Riverside County Department of Social Services (DPSS) detained minor A.P. and initiated juvenile dependency proceedings after receiving a referral that Mother and Father (Parents) sat outside their home in a car abusing a controlled substance while A.P., their four-year-old daughter, was inside their home being sexually abused by a housemate.

A.P. appeals the juvenile court's July 7, 2022 order granting her Mother's petition brought under Welfare and Institutions Code section 388,[1] requesting an additional six months of reunification services. A.P. contends granting the section 388 petition was an abuse of discretion because Mother failed to demonstrate a material change in circumstances or that granting the petition was in A.P.'s best interests. A.P. argues Mother failed to resolve her longstanding substance abuse problem and did not overcome

_____

[1] Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

2

the presumption that continued foster care was in A.P.'s best interests. DPSS, Mother, and Father are respondents in this appeal.

We conclude that, while there was evidence that Mother tested positive for marijuana and was intoxicated within a few months of the section 388 petition hearing, there was no abuse of discretion in the juvenile court granting Mother's section 388 petition and authorizing an additional six months of reunification services for Mother. We therefore affirm the July 7, 2022 order granting Mother's section 388 petition for an additional six months of reunification services.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 23, 2020, DPSS received a referral that Parents' housemate, K.M., had sexually abused A.P. At that time, A.P. was living with Mother, Father, two housemates, and the owners of the home. Law enforcement officers arrested K.M., and Mother and A.P. were transported to the hospital, where A.P. was given a Sexual Assault Response Team exam. The following day, A.P. was placed in a foster home.

A. *Juvenile Dependency Petition*

On January 28, 2020, DPSS filed on behalf of A.P. a juvenile dependency petition under section 300, subdivisions (b) (failure to protect) and (d) (sexual abuse). The petition alleged that, while Parents left A.P. unsupervised, she was sexually abused by a housemate. Parents knew the household member had molested his niece, yet they left A.P. unsupervised in the home with him while Parents were under the influence of

3

controlled substances. In addition, Parents had a history of engaging in domestic violence.

When DPSS interviewed Parents on January 23, 2020, Father reported having been arrested for domestic violence because he made a hole in the wall. He denied hitting Mother. While the investigating officer interviewed Mother regarding the domestic violence, Father attempted to answer for Mother and stated Mother could only be contacted through him. When he was asked not to interrupt during the interview, Father asked Mother several times not to provide the requested information. He acknowledged that while Mother was separately interviewed, he had been listening through the door. Several times Father attempted to terminate Mother's interview.

Mother told the police she knew K.M. had previously been accused of molesting a child, but K.M. had denied it when asked about it. Mother admitted using marijuana and said she had used methamphetamine with Father and K.M. three days before her interview. Mother reported that she recently started using methamphetamine on January 1, 2020. Mother agreed to participate in parenting classes but declined substance abuse treatment.

Parents had a welfare history, which included an inconclusive referral in June 2016, in which Parents allegedly slapped A.P. when she cried or would not sleep, and Parents used methamphetamine. There was also an inconclusive referral in October 2017, that Father left A.P. at the pool unsupervised while he used drugs, and she almost drowned. There was a referral alleging domestic violence between Parents in 2018,

4

resulting in property damage, and several days later a referral alleging Parents were using marijuana and methamphetamine. DPPS reported that Father admitted to having a history of drug use and it was believed Mother may have also been using drugs because of her changed demeanor. The referrals were reportedly closed as inconclusive.

Parents admitted to chronically using marijuana. Mother minimized Parents' drug usage, claiming they did not have a drug problem. They refused to participate in drug treatment programs. On January 27, 2020, they tested positive for methamphetamine and marijuana. The paternal grandparents (PGPs) acknowledged Parents engaged in continual domestic violence. DPSS obtained a protective custody warrant and removed A.P. from Parents on January 24, 2020. At the detention hearing, the court ordered A.P. detained and authorized reunification services and visitation for Parents.

B. *Jurisdiction/Disposition Hearing*

DPSS reported in its jurisdiction/disposition hearing report that there were allegations Parents had a welfare history since 2016, beginning with the 2016 referral. Mother denied substance abuse and tested negative for all substances. The 2016 referral allegation was deemed unfounded. DPSS reported that a second referral in 2017 was also deemed inconclusive because Parents could not be located to complete the investigation. It was alleged Father left A.P. at the pool unsupervised while he used drugs and A.P. almost drowned. There were also allegations of domestic violence between Parents and paternal grandfather (PGF). There was an additional domestic violence referral in 2019, between Parents, in which they argued and pushed each other, and Father vandalized

5

their home. He left and then tried to re-enter by kicking in the front door to hit Mother. Mother was injured and Father was arrested. He admitted to a history of drug use. Mother reportedly may have also been using drugs. She indicated she would not leave Father and bailed him out of jail.

Mother's case plan recommended she participate in individual counseling, a domestic violence program, parenting, and substance abuse treatment and testing. Parents twice failed to meet with the DPSS social worker before the contested jurisdiction hearing. Mother tested positive for marijuana on February 11, 2020, and failed to show for tests on February 21, 2020, February 25, 2020, and March 6, 2020. She tested negative on February 28, 2020

The jurisdiction/disposition hearing report stated that DPSS offered Mother a housing referral but it was contingent upon Father not living there due to his criminal history. After Mother said she would discuss the matter with Father, the social worker received a text message from Mother's phone stating, "'This is [Father]. Who do you think u are telling my girl to move out. Ur stupid for that. Lol she loves me n I never hit a woman in my life keep reading what u see in paper dumb woman u offend me ur no one and will always be no one my family is my family no one can break us apart.'" Mother did not respond to the DPSS's offer to provide housing and did not attend an interview appointment.

At the contested jurisdiction/disposition hearing on March 17, 2020, the court found the dependency petition true, adjudged A.P. a dependent of the court, ordered

6

reunification services for Parents, and ordered parents to participate in their case plan services. A.P. remained in a foster home.

C. *Six-Month Review Hearing*

DPSS reported that on August 3, 2020, Mother checked into an inpatient MFI Recovery Center substance abuse program. She said she checked herself into the program because she was pregnant with her second child and was using marijuana. She did not want the child removed from her care. Her baby was due in November 2020. Mother said she was still romantically involved with Father. Mother did not complete the substance abuse program. She reported she left it on August 27, 2020, due to a family emergency.

Mother failed to show for drug testing on August 24, 2020, September 4, 2020, and January 7 and 13, 2021. She drug tested negative in 2020, on September 3, 17, 24, October 8, 22, November 13, December 3, and 17. Parents regularly visited A.P. The caregiver reported that A.P. enjoyed the visits.

At the six-month review hearing on September 17, 2020, the court found Mother had made moderate progress and continued Parents' reunification services.

D. *Twelve-Month Review Hearing*

DPSS reported in its 12-month status report that on December 29, 2020, Mother enrolled in the Riverside County Substance Abuse Program. Her counselor reported that Mother was not consistently testing but was attending classes and was scheduled to complete the program in April 2021. On February 10, 2021, Mother's substance abuse

7

counselor reported that Mother had been attending her sessions, and her estimated completion date was April 20, 2021. On December 3, 2020, the MOMS program reported that Mother had enrolled in their domestic violence program but she had not attended any sessions. Mother reported she was not attending the program or parenting program because she had recently given birth and was adjusting to her new schedule. In February 2021, she said she planned to enroll in a domestic violence program and was enrolled in individual counseling. Her counselor reported that parenting classes were being arranged.

As of March 2021, Parents were living together in a hotel with their second child, who was born in October 2020. Mother was unemployed and Father was supporting them. A.P. was doing well in her current foster home, where she had been since January 2020. Parents requested A.P. be placed with maternal grandmother (PGM), who indicated she was willing to provide legal guardianship for her, if Parents did not reunify with A.P. Assessment of placement of A.P. with PGPs was pending.

DPSS reported that Mother had made minimal progress in completing her case plan. She had not completed any of her services or drug tested. Mother explained she had been focused on obtaining housing and adjusting to her new schedule after giving birth. DPSS reported that Mother understood she must complete her services and demonstrate she would be protective of A.P. DPSS also stated that Mother had taken responsibility for her substance abuse and admitted using marijuana for pain. She asked for more time to complete her services. Parents were consistently visiting A.P. and the

8

visits went well.  DPSS recommended giving Parents an additional six months of services.

At the 12-month hearing on March 18, 2021, the court ordered continued reunification services for Parents.  The court authorized liberalized visitation, contingent upon case plan compliance.

E.  *18-Month Hearing*

DPSS filed an 18-month status review hearing report recommending terminating Parents' reunification services.  On March 9, 2021, A.P. was placed with PGPs and was happy there.  Parents were still in a romantic relationship.  Mother reportedly stopped attending her treatment program and on April 29, 2021, re-enrolled in another substance abuse program and individual counseling, which she had been attending weekly.  Mother also enrolled in a parenting program.  Mother was not drug testing and had not re-enrolled in domestic violence counseling.  Mother began unsupervised visitation in May 2021.  PGM had no concerns regarding the visits.  DPSS concluded Mother had made progress but A.P. could not be returned to her because she had not demonstrated she could provide a safe, drug-free and violence-free home.  She also had not completed any of her case plan services.

On July 16, 2021, DPSS filed an addendum report recommending termination of services.  Mother had not completed a domestic violence program, parenting program, substance abuse program, substance abuse testing, or counselling services.  Mother failed to show up for testing on April 22, 2021, May 3, 2021, May 13, 2021, and July 2, 2021.

9

DPSS had not received any updates on Mother's substance abuse treatment. During the 18-month status review hearing on July 22, 2021, the court terminated Parents' reunification services and set a section 366.26 hearing.

F. *Section 388 Petition and Section 366.26 Hearing*

DPSS reported in its November 2022, section 366.26 hearing report that Mother was living in an apartment with Father and their infant daughter, born in October 2020. Mother was pregnant with their third child, due in February 2022. Mother was unemployed. Father was supporting her. DPSS recommended a permanent plan for A.P. of legal guardianship with PGM.

On March 28, 2022, Mother filed a section 388 petition, requesting an additional six months of reunification services and transitioning A.P. to placement with Mother. Mother argued changed circumstances, consisting of Mother completing substance abuse treatment and a parenting course, participating in individual counseling, and maintaining sobriety. She gave birth to her third child, who remained in her care and custody, without any DPSS intervention. Mother argued that granting her section 388 petition was in A.P.'s best interests because of her bond with Mother and because reunification would provide an opportunity for Mother to raise A.P. with her two younger siblings. The court granted Mother a hearing on her section 388 petition. At the section 388 petition hearing on March 29, 2022, the court ordered DPSS to investigate the allegations in Mother's section 388 petition and continued the two matters.

DPSS's supplemental section 366.26 report filed in May 2022, and DPSS's section 388 petition response recommended vacating the section 366.26 hearing and granting Mother's section 388 petition. Mother was no longer living with Father. Although DPSS reported Mother had made significant progress on her case plan on her own, DPSS did not believe A.P. could currently be transitioned to Mother's care. DPSS wanted additional time to observe Mother's progress made towards overcoming substance abuse and domestic violence. A.P. reported she wanted to return to Mother's care. DPSS stated in its report that "The Department is hopeful that with additional six months, the mother can demonstrate to the Department she can maintain sobriety and refrain from domestic violence and reunify with her child. The chances of the child returning to the mother's care [are] high."

Father, on the other hand, had not participated in his case plan services and had not shown he was capable of providing A.P. with a safe, stable home. There was no indication Father had completed or benefitted from domestic violence and substance abuse services on his own.

Mother reported consuming marijuana to manage her back pain and intended to renew her medical marijuana card. She also stated she was willing to avoid marijuana and was going to schedule an appointment with a chiropractor. DPSS further reported that Mother completed a substance abuse program in October 2021. She completed after care services for relapse prevention in November 2021. Mother participated in individual

11

therapy and completed a domestic violence program in December 2021, and she completed a parenting program in June 2021.

At the continued section 388 petition hearing on May 23, 2022, DPSS reported that Mother tested negative for drugs in March 2022, but missed a test on April 7, 2022, and tested positive for marijuana and alcohol on April 15, 2022. The parties and court agreed that the matter should be continued to allow for additional drug testing of Mother. The court therefore continued the matter to July 7, 2022. The court authorized unsupervised visitation for Mother if she tested negative.

During the contested section 388 petition hearing on July 7, 2022, DPSS requested the court to grant Mother's petition and her request for six months of additional services, and vacate the section 366.26 hearing. Minor's counsel opposed Mother's section 388 petition, arguing that Mother failed to demonstrate changed circumstances. Mother continued to test positive for drugs and alcohol, and her visits remained supervised. On May 31, 2022, the police were called to Mother's home after Mother came home intoxicated. Also, Mother tested positive for alcohol and marijuana on April 15, 2022, and was still testing positive for marijuana on June 29, 2022, and July 7, 2022.

Mother's attorney argued Mother had "turned things around," which was apparent from the fact she was permitted to care for her infant without DPSS intervention. Mother denied marijuana use and was willing to abide by the court directives not to use it. Mother's attorney asserted that if the court granted the section 388 petition, A.P. would

not be immediately placed with Mother, and the court would have an opportunity to observe and evaluate her conduct while using the additional reunification services.

The court found that Mother had demonstrated changed circumstances based on Mother participating, on her own, in reunification programs to get "back on track and reunify." The court acknowledged Mother tested positive for marijuana right before the section 388 petition hearing, but noted the test results showed a very low level of marijuana, which indicated it may have been in her system for a while. The court further noted that Mother had been caring for her infant, providing for all its needs and doing well, without any DPSS involvement with the infant. The court therefore concluded it would be in A.P.'s best interests for Mother to be provided with additional services, which would hopefully lead to Mother reunifying with A.P.

The court granted Mother's section 388 petition, vacated the section 366.26 hearing, and ordered an additional six months of reunification services, with continued drug testing. Her visits remained supervised but the court authorized liberalized visitation, including unsupervised, weekend, and overnight visits if DPSS deemed them appropriate. The court ordered Father not to be present during Mother's visits with A.P. A.P. appealed the July 7, 2022 order.

## APPLICABLE LAW

A.P. argues that the court abused its discretion by granting Mother's section 388 petition. We disagree.

Section 388 permits the parent of a dependent child to petition the juvenile court for a hearing to modify a previous order based on changed circumstances or new evidence. (§ 388, subd. (a)(1).) The petitioning party bears the burden of showing new evidence or changed circumstances and that the proposed modification is in the best interests of the child. (*In re Stephanie M.* (1994) 7 Cal.4th 295.)

In determining whether the petitioning party has met its burden, "the court may consider the entire factual and procedural history of the case." (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.) "Whether the juvenile court should modify a previously made order rests within its discretion, and its determination may not be disturbed unless there has been a clear abuse of discretion." (*In re J.C.* (2014) 226 Cal.App.4th 503, 525.) The change in circumstances supporting a section 388 petition must be material. (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 (*Ernesto R.*) [requiring a "substantial change of circumstances"]; *In re Mickel O.* (2011) 197 Cal.App.4th 586, 615 [requiring the change in circumstances to be "'significant'" in nature].) "In the context of a substance abuse problem that has repeatedly resisted treatment in the past, a showing of materially changed circumstances requires more than a relatively brief period of sobriety or participation in yet another program." (*In re N.F.* (2021) 68 Cal.App.5th 112, 121 (*N.F.*);

14

see also, *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9.)

With regard to evaluating the second factor, the child's best interests, the focus of the case after termination of reunification services and setting the matter for a section 366.26 hearing, shifts from the parents' interest in the care, custody, and companionship of the child to the child's needs for permanency and stability. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317; *In re J.C.*, *supra*, 226 Cal.App.4th at p. 527.) "A court entertaining a section 388 petition at this stage in the proceedings 'must recognize this shift of focus in determining the ultimate question before it, that is, the best interest of the child.'" (*N.F.*, *supra*, 68 Cal.App.5th at p. 121, quoting *In re Stephanie M.*, *supra*, at p. 317.)

IV.

DISCUSSION

We conclude the juvenile court did not abuse its discretion by granting Mother's section 388 petition and ordering six months of additional reunification services to Mother, even though Mother had a couple of recent positive marijuana tests. The dependency petition is based on allegations of substance abuse, domestic violence, and sexual abuse of A.P. by Parents' housemate. As acknowledged by DPSS, Mother was responsive to the sexual abuse allegations from the inception of the case. Mother immediately reported the sexual abuse to the police, cooperated with investigation of the charges against the housemate, and no longer lived with the housemate.

As to the domestic violence allegation, Mother completed a domestic violence program in December 2021, participated in individual therapy and, as of May 2022, was no longer living with Father. Mother reportedly separated from him and was appropriately caring for A.P.'s two younger siblings in the absence of any DPSS intervention. There was no evidence of any subsequent domestic violence between Mother and Father.

Mother cites *In re I.B.* (2020) 53 Cal.App.5th 133 (*I.B.*) for the proposition that her separation from Father, who physically and emotionally abused her, was a material changed circumstance which should not be underestimated. In *In re I.B.*, the mother was in an abusive relationship with the father of her children, I.B. and A.P. The *I.B.* court concluded that the juvenile court did not abuse its discretion when granting the mother's section 388 petition on the ground the mother demonstrated changed circumstances as to the domestic violence allegation by separating from the abusive father. (*Id.* at pp. 155, 163.)

The *I.B.* court acknowledged that, while the mother's completion of her case plan did not alone establish changed circumstances, doing so "was relevant evidence regarding Mother's forward progress over the past two years in separating herself from Father. The enormous difficulty in separating from a controlling and dominating abuser . . . cannot be overstated. (See Stoever, *Transforming Domestic Violence Representation* (2013) 101 Ky. L.J. 483 (*Transforming Domestic Violence*).)" (*I.B.*, *supra*, 53 Cal.App.5th at p. 154.) The *I.B.* court also noted that, "After the court terminated services, Mother

voluntarily continued with therapy, where she strove to learn how to be a better parent and achieve lasting independence from Father." (*Id.* at p. 155.)

The *I.B.* court rejected the minor's and the social services agency's argument that the mother's separation from the father for eight months was insufficient evidence of changed circumstances, because the mother had repeatedly failed to separate permanently from the father in the past. (*I.B.*, *supra*, 53 Cal.App.5th at p. 155.) The court in *I.B.* explained: "We reject these arguments because they fail to consider our standard of review and improperly rely *only* on evidence unfavorable to Mother. To the extent the juvenile court credited Mother's testimony and other witnesses, we do not upset those credibility determinations on appeal." (*Id.* at p. 156.) Likewise, here, we give deference to the juvenile court's findings and will not reweigh the evidence.

In *I.B.*, the court concluded the mother had rebutted the presumption that continued out-of-home placement was in I.B.'s best interests by showing that I.B., who was only three years old, was still bonded to the mother who had been I.B.'s primary caregiver during the first seven months of his life. Thereafter, the mother visited him every week and was ready and able to provide I.B. with a permanent, safe and loving home. (*I.B.*, *supra*, 53 Cal.App.5th at pp. 159-160.)

In the instant case, A.P. had lived with Mother for four years when removed from Parents, A.P. stated she wanted to live with Mother, and Mother was living independently from Father in her own home and appropriately raising A.P.'s two younger siblings. Here, as in *I.B.*, there was evidence Mother was the victim of domestic violence by

17

Father, and this likely contributed to her substance abuse while living with him and her failure to adequately supervise A.P. The evidence indicates that, as in *I.B.*, Mother's separation from Father was a significant change which supported a finding of changed circumstances.

As to overcoming the dependency petition allegation of failure to protect founded on Mother's substance abuse, after termination of services, Mother completed a substance abuse program in October 2021, completed after care services for relapse prevention in November 2021, participated in individual therapy, and completed a parenting program in June 2021. Mother voluntarily completed her case plan on her own.

However, A.P. maintains that, at the time of the section 388 petition hearing, there was evidence Mother still had a substance abuse problem, which may have been diminishing or changing, but was not *changed* or resolved. A.P. asserts that, because Mother failed to ameliorate the principal, remaining issue of substance abuse underlying the juvenile dependency petition, the juvenile court abused its discretion in granting her section 388 petition and ordering additional reunification services for Mother.

The juvenile court terminated Mother's reunification services because she had not completed her case plan, she was living with Father who also had not made any progress on his case plan, she was not drug testing, she had not enrolled in domestic violence classes, and she had not provided confirmation that she had completed a substance abuse program. The court found that Parents "failed to participate regularly and make

18

substantive progress in a court-ordered treatment plan and there is no substantial probability that [A.P.] may be returned if given another six months or services."

A.P. notes that, although Mother completed a substance abuse program in October 2021, afterwards, on April 15, June 29, and July 7, 2022, she tested positive for marijuana. There is no evidence regarding the circumstances of these instances in which Mother tested positive for marijuana, other than the lab test results were positive. There is no evidence as to when Mother used the marijuana nor is there evidence that A.P.'s younger siblings were in any danger as a result of Mother's marijuana use.

A.P. also argues that on May 31, 2022, Mother returned home intoxicated after going out in the evening. Mother explained to the investigating police officer that she had asked Father, who was living with friends, to take care of the children at her home while she went out with her sister. There is no evidence that the reported incident of Mother returning home intoxicated endangered Mother's children. The police reported to Mother's home in response to Father's call after Mother arrived home intoxicated and investigated the matter, without taking any further action.

We conclude evidence of Mother testing positive for marijuana in April, June, and July 2022, and her intoxication in May 2022, is insufficient to support reversing the juvenile court's order granting Mother's section 388 petition because there was substantial evidence supporting the ruling. Mother had independently, on her own, completed her case plan, she was appropriately caring for her other two younger children without any DPSS intervention, she had separated from Father, and there was no

19

evidence Mother's single episode of intoxication in May 2022, and instances of testing positive for marijuana in April, June, and July 2022, posed any risk of harm to A.P.'s younger siblings or A.P.

Recently enacted section 328.2 and its legislative history demonstrate that evidence of the use of legal substances, such as alcohol and marijuana, is not enough for removal of a child from a parent. Effective January 1, 2023, the Legislature enacted section 328.2 (A.B. 2595), which provides: "The State Department of Social Services shall update all regulations, all-county letters, and other instructions relating to the investigation of a minor who may be described by [s]ection 300 to ensure that, when a social worker is investigating an alleged case of child abuse or neglect, *a parent's or guardian's use or possession of cannabis is treated in the same manner as a parent's or guardian's use or possession of alcohol and legally prescribed medication*." (Italics added.)

The author of A.B. 2595 (Cal. Assem. Bill No. 2595, 2021-2022 Reg. Sess.) explained regarding the bill enacting section 328.2 that "'California has found that cannabis use, whether medical or recreational, is acceptable for adults. *Thus, cannabis use alone should not be a basis for state intervention into family life*. As is the case with *alcohol* and prescription medication, parents and guardians should be allowed to safely and legally use cannabis without fear of having their children permanently removed from their care, *provided there are no other concerns regarding the child's safety*. As such, AB 2595 directs the Department of Social Services to update its regulations to ensure that

20

cannabis is treated as any other legal substance for the purposes of child custody and dependency courts.'" (Sen. Rules Com., Off. Sen. Floor Analyses 3d reading on Jun. 13, 2022, background, p. 4, italics added.)

The Senate Rules Committee's background analyses of A.B. 2595 (section 328.2) notes that "Existing law specifies that substance use can be a cause of a neglect, causing a child to fall under the jurisdiction of the juvenile dependency court. (See Penal Code [s]ection 11165.13) However, the existing law is clear that *substance use alone should not result in the removal of a child*, and *California courts have repeatedly held that drug use by a parent, absent other factors 'is typically inadequate to establish dependency jurisdiction.'* (See *In re A.G.* (2020) 2020 Cal. App. Unpub LEXIS 5276)" (Sen. Rules Com., Off. Sen. Floor Analyses 3d reading on Jun. 13, 2022, background, p. 4, italics added.)

The Senate Rules Committee also noted that the Legislature passed AB 788 (Calderon, Chapter 201, Statutes of 2021) amending section 361.5, to allow for "reunification services to be provided to a parent with substance use issues who had experienced a relapse. This codified a California Court decision, in which the court noted 'a relapsed parent is far from hopeless. It is decidedly not fruitless to offer services to a parent who genuinely made an effort to achieve sobriety but slipped up on the road to recovery.' (*In re B.E.* (2020) 46 Cal.App.5th 932, 941.) In that case, and other instances impacted by the passage of AB 788, the CWS system was involved with the child because there was substantiated allegations of abuse or neglect and the parent was

21

seeking reunification services to help them address their substance use or other challenges. Prior to the passage of AB 788, parents or guardians could be denied reunification services if they had a history of extensive, abusive, and chronic use of drugs or alcohol and had relapsed (i.e. passively resisted treatment) during a three-year period prior to the filing of the petition that brought the child to the court's attention." (Sen. Rules Com., Off. Sen. Floor Analyses 3d reading on Jun. 13, 2022, background, p. 5.)

The Senate Judiciary Committee agreed with the Senate Rules Committee regarding AB 2595 (section 328.2) that "This bill seeks to address and prevent juvenile court petitions from being filed solely on the basis of a parent or guardian's use or possession of legal cannabis by further clarifying that *a parent or guardian's cannabis use or possession, without more, does not constitute abuse or neglect for purposes of the juvenile court.*" (Sen. Judiciary Com. Jun. 21, 2022, hearing report, executive summary, p. 2, italics added.)

The Senate Judiciary Committee elaborated: "For purposes of this bill, the relevant jurisdictional basis for dependency jurisdiction provides that a child is a dependent of the juvenile court when the child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness as a result of the parent's inability 'to provide regular care for the child due to the parent's . . . substance abuse.' [(§ 300, subd. (b)(1).)] *There is no statutory provision for placing a child under the jurisdiction of a court solely on the basis of a parent's use or possession of controlled substances. Even before California legalized adult recreational use and possession of*

22

*cannabis, the Courts of Appeal consistently held that cannabis use, without more, is insufficient to establish a substantial risk of detriment to the physical or well- being of the child.*" (Sen. Judiciary Com. Jun. 21, 2022, hearing report, executive summary, p. 4, italics added.)

The Senate Judiciary Committee further explained that, "Given that *case law prohibited a parent's cannabis use, on its own, from being a basis for dependency jurisdiction* before the passage of Proposition 64 legalizing specified forms of adult use and possession of cannabis,[fn. omitted] the passage of Proposition 64 should have made it abundantly clear to child welfare agencies that *a parent's possession or use of a legal substance cannot be the basis for a petition to make a child a dependent* of the juvenile court. At this point, threatening to remove a child from their parent's care only because of their cannabis use is akin to threatening to remove a child from their parent's care because the parent has an occasional cocktail or uses prescription medications *with no deleterious effects on the parenting itself.* There is simply no legal basis for doing so." (Sen. Judiciary Com. Jun. 21, 2022, hearing report, comments, pp. 4-5, italics added.)

Therefore, "when a social worker is investigating an alleged case of child abuse or neglect, the *parent's use or possession of cannabis is treated in the same manner as the parent's use or possession of alcohol* or legally prescribed medication would be. . . . [A]buse of any of these or other substances, by themselves, does not warrant assertion of dependency jurisdiction over a child. That requires a showing of harm, or substantial risk of harm, to the child." (Sen. Judiciary Com. Jun. 21, 2022, hearing report, comments, p.

5.) The Senate Judiciary Committee, however, emphasized: "To be clear, nothing in current law or this bill alters the existing law permitting a juvenile court petition when the parent's cannabis use causes such substantial harm or risk of substantial harm. . . . This bill simply emphasizes—again—that it is long past time to stop treating cannabis use as inherently suspect." (Sen. Judiciary Com. Jun. 21, 2022, hearing report, comments, p. 5.)

A.B. 2595 and its legislative history support the proposition that the juvenile court's ruling granting Mother's section 388 petition and ordering additional reunification services was not an abuse of discretion. Mother had completed her case plan, and there was a lack of evidence that Mother's positive drug tests for marijuana in April, June, and July 2022, and her intoxication in May 2022 supported a finding that she was unable to provide appropriate, regular care for A.P. such that A.P. would be at substantial risk of suffering serious physical harm or illness.

Although we do not condone parents using cannabis or alcohol while caring for their children, because it can lead to inattentiveness and failure to protect their children, as occurred initially in this case, section 328.2 clarifies that using cannabis and or alcohol is not, alone, a valid basis for removing a child from a parent. We thus conclude it is not a valid ground for denial of Mother's section 388 petition, when there was no showing linking Mother's recent positive test results for marijuana and her intoxication on one occasion to a failure or risk of failure to supervise appropriately her young children. We therefore conclude the juvenile court could reasonably find that, as to Mother, there was

no longer a substantial risk of harm to A.P. based on domestic violence, sexual abuse, or substance abuse.

A.P. argues there was evidence Mother had a long-standing substance abuse problem based on evidence of three referrals, in 2016, 2017, and 2019. But the evidence shows that in 2016, DPSS received a closed, inconclusive referral that Mother was abusing methamphetamine and marijuana. The 2017 referral was also inconclusive and closed, and concerned Father, not Mother, abusing drugs. The record cited by A.P. as to a 2019 referral does not show that Mother was abusing substances in 2019. While there was speculation that Mother might have had a long-term substance abuse problem beginning in 2016, such allegations are not confirmed by the evidence in the record and are merely inconclusive, speculative allegations, which the juvenile court could have reasonably rejected as not sufficiently substantiated. Nor is there evidence Mother was abusing controlled, illegal substances, such as methamphetamine, at the time of the section 388 petition hearing. The court therefore could have reasonably found that Mother was not abusing illegal drugs and did not have an unresolved long-term substance abuse problem.

It was also reasonable for the juvenile court to find that Mother's substance abuse problem when DPSS filed the dependency petition was directly related to being engaged in an abusive, controlling relationship with Father. The evidence shows that once Mother separated from Father, she made significant progress in completing her case plan, including addressing her substance abuse, and was appropriately caring for her newborn

25

and other young child, without DPSS intervention. After Mother separated from Father and completed her case plan, DPSS therefore recommended that the court grant Mother's section 388 petition and order an additional six months of services because it was likely Mother would reunify with A.P.

These circumstances provided a reasonable basis for the juvenile court to find that granting Mother additional services was in A.P.'s best interests. The additional services would provide additional time for Mother to establish her ability to appropriately care for A.P. so that A.P. could be safely returned to Mother's care and grow up with A.P.'s younger siblings. We therefore conclude, based on a review of the totality of the evidence, without reweighing it, that the court did not abuse its discretion by granting Mother's section 388 petition and ordering additional reunification services for Mother.

A.P. cites *Ernesto R.*, *supra*, 230 Cal.App.4th 219, and *N.F.*, *supra*, 68 Cal.App.5th 112, in support of her contention that Mother's circumstances had not materially changed and therefore the juvenile court abused its discretion in granting Mother's section 388 petition. Both cases are distinguishable. In *Ernesto R.*, *supra*, 230 Cal.App.4th at page 223, after the juvenile court terminated parental rights to Ernesto, the mother appealed, arguing her attorney provided ineffective assistance of counsel (IAC) because he did not file a section 388 petition to modify an order bypassing reunification services. Ernesto was removed from his mother because he tested positive for marijuana at birth, the mother had a history of chronic substance abuse, and she had a child welfare history in which she had previously failed to reunify with her two older children. After

Ernesto was detained, the mother participated in a drug treatment program, attended group meetings, and tested negative for drugs. The juvenile court denied the mother reunification services, concluding the mother's efforts were "too little and too late." (*Ernesto R.*, *supra*, at p. 222.)

At the contested section 366.26 hearing in *Ernesto R.*, the child welfare services agency (agency) reported the mother was living in a shelter and receiving an array of services. The agency was concerned about the mother's ability to maintain long-term sobriety because she had participated previously in four treatment programs and had relapsed. Also, she had failed to reunify with two of her older children due to her chronic substance abuse and had used illegal substances while pregnant with Ernesto.

The *Ernesto R.* court rejected the mother's IAC contention, explaining that "A section 388 petition must show a change of circumstances and that modification of the prior order would be in the best interests of the minor child. [Citations.] To support a section 388 petition, the change in circumstances must be substantial. [Citation.] Appellant's recent sobriety reflects 'changing,' not changed, circumstances. [Citation.] Appellant has a history of drug relapses, is in the early stages of recovery, and is still addressing a chronic substance abuse problem. (See *In re Kimberly F.*[, *supra*,] 56 Cal.App.4th [at p.] 531, fn. 9 ['It is the nature of addiction that one must be "clean" for a much longer period than 120 days to show real reform.']; *In re Clifton B.* (2000) 81 Cal.App.4th 415, 423-424 [200 days of sobriety not enough].) Appellant's completion of

a drug treatment program, at this late a date, though commendable, is not a substantial change of circumstances." (*Ernesto R.*, *supra*, 230 Cal.App.4th at p. 223.)

The court in *Ernesto R.* also concluded that, even if there were a change in circumstances, the mother failed to demonstrate that reunification services and liberalized visitation would be in Ernesto's best interests. (*Ernesto R.*, *supra*, 230 Cal.App.4th at p. 223.) Ernesto had been in the care of his foster parents for the majority of his life and was bonded to them. Granting a section 388 petition would delay selection of a permanent home, which the *Ernesto R.* court concluded would not serve Ernesto's best interests. (*Ernesto R.*, *supra*, at pp. 223-224.)

The factors the *Ernesto R.* court considered when evaluating Ernesto's best interests under section 388 were: "(1) the seriousness of the problem that led to the dependency and the reason for any continuation of that problem; (2) the strength of the child's bond with his or her new caretakers compared with the strength of the child's bond with the parent, and (3) the degree to which the problem leading to the dependency may be easily removed or ameliorated, and the degree to which it actually has been." (*Ernesto R.*, *supra*, 230 Cal.App.4th at p. 224; citing *In re Kimberly F.*, *supra*, 56 Cal.App.4th at pp. 531-532.) The *Ernesto R.* court concluded that none of these factors favored granting a 388 petition, and therefore not filing a section 388 petition did not constitute IAC, because doing so would have been futile. (*Ernesto R.*, *supra*, at p. 225.)

28

The instant case is distinguishable from *Ernesto R.* for many reasons. First, *Ernesto* pre-dated legislation, such as A.B. 2595 (§ 328.5) and A.B. 788 (§ 361.5), which clarified that parents shall not be deprived of reunification services based solely on the use of marijuana or long-term substance abuse unless there is evidence it causes substantial harm or there is a risk of substantial harm. (Sen. Judiciary Com. Jun. 21, 2022, hearing report, comments, p. 5.) Second, here, Mother's attorney filed a section 388 petition, which was granted. Third, there was evidence that Mother's drug abuse may not have been long-term, chronic abuse. There was evidence she started abusing drugs while with Father, who was abusive. Although during the dependency proceedings, Mother completed substance abuse treatment and relapsed, there was evidence that when she separated from Father, she made significant progress in overcoming substance abuse and completing her case plan. Fourth, Mother provided evidence she had succeeded in separating from Father and was living independently in her own home, appropriately caring for her two other young children in the absence of any DPSS intervention. While there remained the possibility that Mother might relapse on marijuana and alcohol, those substances are not illegal in California, and there was no evidence presented at the section 388 petition hearing that her relatively recent positive tests for marijuana and the recent incident of intoxication presented any risk of harm to her two younger children living with her or a future risk of harm to A.P. Fifth, Mother had secured suitable housing. Sixth, Mother, on her own, enrolled and participated in rehabilitative programs. On June 29, 2022, Mother's therapist and the DPSS reported

that she had made great progress in overcoming her substance abuse and domestic violence. Seventh, A.P. would benefit from the court granting the section 388 petition because reunification, which DPSS concluded was likely if Mother were given additional services, would allow Mother to raise A.P. with A.P.'s two younger siblings. Eighth, unlike in *Ernesto R.*, Mother not only filed a section 388 petition but, in addition, DPSS recommended the court grant it, and the juvenile court did so based on finding changed circumstances and that it was in A.P.'s best interests to grant Mother six months of additional reunification services. Ninth, in *Ernesto R.*, Ernesto was removed from his mother because he tested positive at birth and therefore had been in the care of his foster parents for the majority of his life, whereas in the instant case, A.P. was removed from Mother when A.P. she was four years old and A.P. said she wanted to return to her care.

DPSS stated in its July 1, 2022, addendum to the section 366.26 report, that Mother "has made significant progress on her case plan services on her own without the Department's assistance. The mother has completed her substance abuse outpatient program, domestic violence services, and a parenting education program, with good reviews. Additionally, the mother continues to be engaged in individual therapy sessions. The Department is hopeful that with additional six month[s] of family reunification services, the mother can demonstrated[sic] to the Department that she is able to care for her child needs and address the concerns of domestic violence and substance abuse concerns that led to the involvement of the Department."

We recognize that DPSS further reported that it remained "concerned that the parents will engage in acts of domestic violence and have issues of substance abuse, as they have done so in the past." Nevertheless, when balancing Mother's significant progress and the potential benefits to A.P. of granting Mother an additional six months of reunification services with the likelihood of reunification, we conclude the juvenile court did not abuse its discretion in granting Mother's section 388 petition and additional services.

In *N.F.*, *supra*, 68 Cal.App.5th 112, which is also distinguishable, we affirmed the juvenile court's order denying the mother's section 388 petition requesting six months of reunification services. We rejected the mother's argument that her circumstances had changed. The mother argued that she had completed a 90-day residential substance abuse treatment program about four months before the section 388 hearing and had remained sober. She also had stable housing and was working. (*N.F.*, *supra*, at p. 119.) There was evidence, however, that about two months after she completed the substance abuse program, the mother was charged with possession of a controlled substance. We noted in *N.F.* that, "On this record, Mother's brief period of sobriety and completion of a treatment program was only the most recent attempt in a series of unsuccessful attempts to overcome her substance abuse. Given Mother's history, her recent completion of yet another program did not constitute a material change in circumstances." (*N.F.*, *supra*, at p. 122.)

We further concluded that the mother's assertions that she was working and had housing did not establish material changes within the meaning of section 388. We explained that "[t]he court denied her reunification services because of her unresolved history of substance abuse. (§ 361.5, subd. (b)(13).) Without a showing that her substance abuse had materially changed, the changes concerning her housing and employment could not support her petition." (*N.F.*, *supra*, 68 Cal.App.5th at p. 122.)

In *N.F.*, we also concluded the mother had not sufficiently established that granting the mother reunification services was in the child's best interests. (*N.F.*, *supra*, 68 Cal.App.5th at p. 122.) The parents had received over three years of services, with the mother relapsing numerous times after receiving substance abuse treatment. The young child, N.F., had tested positive for methamphetamine and amphetamine at birth and was removed from her mother. She was returned to her mother after about six months and the family remained on family maintenance for about 32 months. Following the mother's relapse on methamphetamine, the child was once again detained in foster care and the mother continued to struggle with relapsing on methamphetamine. Although N.F. had been placed in the mother's care for approximately two and one-half years, she also had been in numerous foster care placements throughout the dependency proceedings.

At the time of the section 388 hearing, the child was thriving in a stable home and was bonded to her caregivers, who wanted to adopt her. In contrast, the mother's circumstances remained unstable. We thus concluded "[t]here was no telling whether her latest efforts at sobriety would be lasting. Mother thus failed to establish that N.F.'s 'best

32

interests in *permanency and stability* would be furthered by' derailing the child's adoption." (*N.F.*, *supra*, 68 Cal.App.5th at p. 122, quoting *In re J.C.*, *supra*, 226 Cal.App.4th at p. 526.)

Here, unlike in *N.F.*, *supra*, 68 Cal.App.5th 112, the juvenile court reasonably found that Mother had made significant progress resolving the problems that led to the juvenile dependency proceedings, including substance abuse. There was evidence that when the dependency petition was filed, Father had adverse influence and control over Mother. They were in an abusive relationship, leading to Mother's substance abuse and the removal of A.P. While living with Father, Mother failed to cooperate with DPSS in reunifying with A.P. Unlike in *N.F.*, Mother succeeded in separating from Father, finding suitable housing, and completing her case plan, including a substance abuse plan.

Although there was evidence Mother had tested positive for marijuana three times within a few months of the section 388 hearing, unlike in *N.F.*, there was no evidence she was abusing any illegal controlled substances, and there was no evidence her use of marijuana adversely affected her ability to care for her two younger children who were living with her. Her therapist and DPSS both reported that Mother had made great progress toward rehabilitating and DPSS recommended granting her section 388 petition requesting additional reunification services, with reunification with A.P. likely.

Also, unlike in *N.F.*, *supra*, 68 Cal.App.5th 112, in this case, there had not been any previous instances in which A.P. was returned to Mother's care after removal, and then removed a second time because of substance abuse. In addition, in the instant case,

33

when the section 388 petition was granted, the juvenile dependency proceedings had been pending for about two and a half years (from January 28, 2020, until July 7, 2022).  In *N.F.*, the court denied the mother's section 388 petition about four years after the initial dependency petition was filed.

Also, in this case, unlike in *N.F.*, *supra*, 68 Cal.App.5th 112, the juvenile court granted, rather than denied the section 388 petition, and did so consistent with DPSS's recommendation.  Based on "the entire factual and procedural history of the case," we conclude there was sufficient evidence showing changed circumstances and that granting additional reunification services was in A.P.'s best interests.  (*In re Justice P.*, *supra*, 123 Cal.App.4th at p. 189.)  The juvenile court's decision to grant Mother's section 388 petition and order additional reunification services rested within the court's discretion, and this court may not disturb that ruling because there has not been a clear abuse of discretion.  (*In re J.C.*, *supra*, 226 Cal.App.4th at p. 525.)

We conclude the evidence supported reasonable findings that Mother had turned her life around by separating from Father and completing her case plan.  There was evidence that Mother had overcome her substance abuse to the extent it might interfere with her ability to supervise and protect A.P.  The juvenile court reasonably concluded that, based on the totality of the evidence, Mother had met her burden of demonstrating materially changed circumstances and that the requested additional six months of reunification services would promote A.P.'s best interests.  It would allow Mother to reunify with A.P., which was likely, and would enable A.P. grow up with her two

34

younger siblings.  Because we do not find any abuse of discretion, we affirm the July 7, 2022, ruling granting Mother's section 388 petition and ordering an additional six months of reunification services for Mother.

V.

DISPOSITION

The July 7, 2022 order granting Mother's section 388 petition for an additional six months of reunification services is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

McKINSTER

J.